IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BIOTRONX, LLC, and SCOTT STEVENSON, ) ) ) Plaintiffs, ) ) v. ) ) TECH ONE BIOMEDICAL, LLC, and ) MATTHEW MINCER, ) ) Defendants. ) | NO. 3:19-cv-01035 JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM

### I. Introduction

Pending before the Court are Defendants' Motion to Dismiss (Doc. No. 18); Plaintiffs' Response (Doc. No. 26); and Defendants' Reply (Doc. No. 28). For the reasons set forth below, Defendants' Motion is **GRANTED** in part, and **DENIED** in part. Accordingly, Plaintiffs' breach of contract claim is dismissed. In all other respects, Defendants' Motion is denied.

### II. Factual and Procedural Background

Plaintiffs Scott Stevenson and BiotronX, LLC ("BiotronX") assert claims for breach of contract, promissory estoppel, and promissory fraud against Defendants Tech One Biomedical, LLC ("Tech One") and Matthew Mincer, arising out of the parties' discussions and actions regarding the potential sale of BiotronX to Tech One. (Amended Complaint (Doc. No. 15)). Plaintiffs allege BiotronX is a laboratory instrument repair company, owned by Mr. Stevenson, that specializes in maintenance of an immunohistochemistry ("IHC") laboratory instrument called the Autostainer. (*Id.* ¶¶ 2, 6). Tech One is a laboratory instrument repair company that services

general laboratory equipment commonly found in most histology laboratories. (*Id.* ¶ 6). Mr. Mincer is the president of Tech One. (*Id.* ¶ 4).

In the spring of 2018, Mr. Stevenson and Mr. Mincer entered into negotiations regarding Tech One investing in or buying BiotronX. (*Id.* ¶ 7). At that time, Mr. Mincer allegedly stated he did not wish to enter the IHC instruments market, that the Autostainer was declining in popularity, and no one at Tech One had experience maintaining such instruments. (*Id.*) On April 18, 2018, however, Mr. Mincer hired Mr. Stevenson as Field Engineer to repair lab instruments in the field and allowed Mr. Stevenson to continue working for BiotronX. (*Id.* ¶ 8).

In August 2018, Plaintiffs learned that Biocare Medical LLC ("Biocare"), a leading supplier of IHC instrumentation, was discontinuing service for the Autostainer, and an identical instrument called the Nemesis, and that Tech One had been chosen as a qualified company to service the instruments. (*Id.* ¶ 9). At that time, Mr. Stevenson was the only representative of Tech One with experience servicing the instruments. (*Id.*) The negotiations resulting in the contract with Biocare had occurred over several months, without Mr. Stevenson's knowledge. (*Id.* ¶ 10).

On August 2, 2018, Mr. Stevenson called Mr. Mincer about the Biocare contract, and told him that he (Mr. Stevenson) could not service the contract without being paid a higher salary, or in the absence of the purchase of his business. (*Id.*) Mr. Mincer advised Mr. Stevenson, among other things, that he was considering having Plaintiffs do most of the work on the Biocare contract, and would get back in touch with him. (*Id.*)

On August 29, 2018, Mr. Mincer sent a text to Mr. Stevenson stating he had been working on a preliminary plan that "will keep you here and work for both you and TOBS [Tech One]." (*Id.* ¶ 11). Beginning on that date, Plaintiffs allege the parties had concrete discussions, by telephone, text, and in person, in Chicago, Illinois, concerning both the purchase of BiotronX and the further

2

employment of Mr. Stevenson by Tech One. (*Id.* ¶¶ 11-12). By September 13, 2018, the parties were concentrating on a plan for Tech One to buy BiotronX, with the price as the only matter to be resolved. (*Id.* ¶ 12). On that date, Mr. Mincer sent a text stating: "I'm buying everything as far as I know." (*Id.*) The parties then began to discuss the other matters that needed to be resolved to complete the sale:

> While discussing BiotronX's inventory, Stevenson explained that he had several intact instruments in addition to spare parts inventory. Mincer replied that Tech One had no interest in reselling instruments of any kind because it was not worth the effort and that he wanted only to service lab instruments. Mincer also stated that Tech One did not want to receive the intact instruments from Plaintiffs and that, as part of the sale and in order to get the inventory ready for transfer, Stevenson needed to go ahead and break down the instruments and save only the parts, as Tech One wanted to buy only the parts and not the intact instruments. Stevenson, before he began to disassemble the instruments, asked Mincer if Defendants wanted to keep the remaining body panels and chassis. Mincer stated that Tech One did not want those items and that they should be discarded or scrapped. The deal on parts, as Mincer explained during that telephone conversation, was that Tech One would buy only BiotronX's parts inventory, and Stevenson agreed. When the conversation ended, Stevenson and Mincer had agreed that in return for Tech One's agreement to purchase BiotronX's inventory, Stevenson agreed to dismantle the instruments in the inventory and discard the panels and chassis.

(*Id.*) According to Plaintiffs, Mr. Mincer did not suggest they should wait to dismantle the instruments until a formal contract was signed, or that Mr. Mincer might change his mind about purchasing BiotronX. (*Id.*)

On September 20, 2018, Mr. Stevenson sent an email to Mr. Mincer with an inventory listing ten instruments. (*Id.* ¶ 13). Plaintiffs allege Defendants were aware of the harm that would result if Defendants breached the agreement to purchase. (*Id.* ¶ 14). Plaintiffs also allege Mr. Mincer induced Mr. Stevenson to begin disassembling the instruments, and Mr. Stevenson reasonably relied on Mr. Mincer's promise to purchase the inventory in disassembling the instruments. (*Id.*) On September 28, 2018, Mr. Mincer asked Mr. Stevenson if he had been working on the request to disassemble the instruments. (*Id.* ¶ 15).

3

On October 1, 2018, Mr. Stevenson texted Mr. Mincer the following:

> Another reason I was being a little pushy was because although I understand none of this is your problem, in August when you told me of your plan to move forward with this purchase, my wife and I altered our financial plans accordingly. We don't have much time, and it's getting a bit too late for us to revert back to our original plans.

(*Id.* ¶ 16). Plaintiffs allege this text and other communications indicate Defendants understood the financial consequences of failing to complete the purchase agreement. (*Id.*)

Also, on October 1, 2018, Plaintiffs allege Mr. Mincer telephoned Mr. Stevenson, and they agreed on a price of $250,000 for the purchase of BiotronX's inventory, to be paid in cash. (*Id.* ¶ 17). Mr. Mincer also represented that Tech One had plenty of liquid assets to consummate the purchase and Plaintiffs should not worry. (*Id.*) A subsequent telephone call that day "confirmed the purchase price for the going concern value of BiotronX, as determined by Tech One's accountant, as $142,000.00." (*Id.*)

On October 10, 2018, Mr. Mincer called Mr. Stevenson and advised that Tech One would not purchase BiotronX's inventory. (*Id.* ¶ 18). When asked the reason, Mr. Mincer replied "nothing had changed except his mind." (*Id.*) Mr. Mincer also stated he did not need to buy BiotronX because he already had Mr. Stevenson on his payroll. (*Id.*)

On October 11, 2018, Mr. Mincer called Mr. Stevenson and terminated Mr. Stevenson's employment with Tech One because "there was no longer mutual trust between the parties." (*Id.* ¶ 19). Mr. Mincer offered to let Mr. Stevenson subcontract for Tech One, and Mr. Stevenson sent a proposal, "which came to naught." (*Id.*)

Through the pending motion, Defendants argue Plaintiffs' claims should be dismissed.

### III. Analysis

**A. The Standards Governing Motions to Dismiss**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has sufficiently alleged "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Well-pleaded factual allegations are accepted as true and are construed in the light most favorable to the nonmoving party. 129 U.S. at 1950; *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017).

**B. Breach of contract**

Defendants argue Plaintiffs' claim for breach of an oral contract must be dismissed because it fails to comply with the statute of frauds provision of the Tennessee Uniform Commercial Code ("UCC"), Tennessee Code Annotated Section 47-2-201(1). Section 47-2-201(1) provides, in pertinent part:

> (1) Except as otherwise provided in this section, a contract for sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing or record sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

The statute goes on to list the following exceptions to the writing requirement:

> (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
>
> (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their

5

procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (§ 47-2-606).

Plaintiffs argue the first ("specially manufactured goods") exception to the writing requirement applies here because the parts that came from the instruments Defendants specifically asked Mr. Stevenson to disassemble should be considered to be "specially manufactured." According to Plaintiffs, after "disassembly of the ten instruments, they were no longer suitable for sale to others, because their panels and chassis were thrown away at Mincer's request." (Doc. No. 26, at 6).

Defendants contend the Court should not consider this argument because it was not alleged in the Amended Complaint. In the Amended Complaint, Plaintiffs allege the statute of frauds does not apply to the oral contract "because the parties' agreement did not require that it not be performed with the year and because Plaintiffs' disassembly of instruments at Defendants' request constituted part performance." (Doc. No. 15 ¶ 21).[1] Plaintiffs did not specifically allege applicability of the "specially manufactured goods" exception.

Defendants have not cited any authority requiring statute of fraud exceptions be alleged in the complaint. Even if the exception had been alleged, however, the Court is not persuaded Plaintiffs' allegations are sufficient to invoke the exception. Plaintiffs allege they disassembled the

---

[1] Tennessee courts have recognized an exception to enforcement of the statute of frauds if one party has partially performed. *Trew v. Ogle,* 767 S.W.2d 662, 664 (Tenn. Ct. App. 1988); *Key v. Renner,* 2017 WL 5952915, at *4 (Tenn. Ct. App. Nov. 30, 2017). Plaintiffs have not relied on the "partial performance" exception in responding to the motion to dismiss.

6

instruments because Defendants wanted "to buy only the parts and not the intact instruments" and that the parts were not as valuable as the intact instruments. (Doc. No. 15 ¶¶ 12, 20). Plaintiffs have not alleged the parts "are not suitable for sale to others in the ordinary course of" business, only that they were not as valuable. But the diminution in value of the disassembled parts and/or the scarcity of alternate buyers does not mean the parts were "specially manufactured." *See, e.g., Arthur Blum Signs, Inc. v. Transportation Displays Inc.*, 273 A.D.2d 46, 47–48, 709 N.Y.S.2d 49, 51 (N. Y. App. Div. 2000) ("Unsalability under this section must be based on the characteristics of special manufacture, rather than on such tests as lost market opportunities or a seller's unrelated inability to dispose of the goods.")

In addition, Plaintiffs have not alleged their "disassembly" of the instruments results in goods that are "specially *manufactured*" within the meaning of the exception, nor have they cited any authority supporting that argument. *See generally Manufacturer,* Black's Law Dictionary (11th ed. 2019) ("Manufacturer" is defined as "[a] person or entity engaged in producing or *assembling* new products"); Tenn. Code Ann. § 29-28-102(4) (For purposes of Tennessee Products Liability Act, "manufacturer" is defined as "the designer, fabricator, producer, compounder, processor or *assembler* of any product or its component parts.") Thus, the Court concludes Plaintiffs have not satisfied the specially manufactured goods exception, or any other exception, to Section 47-2-201, and their claim for oral breach of contract must be dismissed.[2]

---

[2]  Plaintiffs have not argued the UCC is inapplicable here because the sale of BiotronX does not involve the sale of "goods." *See, e.g., Audio Visual Artistry v. Tanzer,* 403 S.W.3d 789, 796-804 (Tenn. Ct. App. 2012) (applying the "predominant purpose test" to determine whether contract is predominantly for the sale of goods). Thus, the Court has not addressed the issue.

## C. <u>Promissory estoppel</u>

Defendants argue the promissory estoppel claim is also barred by the writing requirement of Section 47-2-201. Plaintiffs contend the promissory estoppel claim is not subject to the writing requirement because it is a claim based in equity rather than contract.

Both sides agree that Tennessee courts have not addressed this specific issue. A majority of courts in other states, however, hold that promissory estoppel claims may be pursued in cases otherwise subject to the terms of the UCC. *See, e.g., S & P Brake Supply, Inc. v. STEMCO LP*, 385 Mont. 488, 385 P.3d 567, 574 (Mont. 2016) ("A majority of jurisdictions have adopted the rule that promissory estoppel may remove an oral contract from the requirements of the UCC statute of frauds."); *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 815 (Wyo. 1992) ("In our view, the better-reasoned approach is articulated by those courts that have approved the majority view that promissory estoppel avoids § 2–201."); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 443, 249 Cal. Rptr. 872 (Cal. Ct. App. 1988), *as modified on denial of reh'g* (Aug. 26, 1988) ("[T]he great weight of authority from sister state jurisdictions holds that estoppel can be applied to overcome the Uniform Commercial Code's statute of frauds provision as long as a court is not enforcing a mere oral promise. There must be some form of detrimental reliance.")

The Court concludes that Tennessee courts are likely to adopt this majority view. First, as these courts point out, the UCC "rules of construction," which in Tennessee, are codified at Tennessee Code Annotated Section 47-1-103, specifically include "estoppel" in the listing of principles supplementing the UCC:

> (a) Chapters 1-9 of this title must be liberally construed and applied to promote its underlying purposes and policies, which are:
>
> (1) To simplify, clarify, and modernize the law governing commercial

8

Case 3:19-cv-01035 Document 31 Filed 06/08/20 Page 8 of 17 PageID #: 231

> transactions;
>
> (2) To permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and
>
> (3) To make uniform the law among the various jurisdictions.
>
> (b) *Unless displaced by the particular provisions of chapters 1-9 of this title, the principles of law and equity, including* the law merchant and *the law relative to* capacity to contract, principal and agent*, estoppel,* fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause *supplement its provisions*.

Tenn. Code Ann. § 47-1-103(a), (b) (emphasis added). Defendants have pointed to nothing in the UCC that has specifically "displaced" estoppel principles.

In addition, the promissory estoppel cause of action does not depend on the existence of an express contract between the parties. *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). By contrast, in imposing the writing requirement, Section 47-2-201(1) assumes the existence of a contract. Tenn. Code Ann. § 47-2-201(1) ("Except as otherwise provided in this section, a *contract* for sale of goods . . .")

Indeed, as Plaintiffs point out, in contract cases outside the UCC context, Tennessee courts recognize promissory estoppel as a viable claim where the applicable statute of frauds would otherwise bar an oral contract. *See EnGenius Entertainment, Inc. v. Herenton,* 971 S.W.2d 12, 20-21 (Tenn. Ct. App. 1997) (explaining that the statute of frauds (Tenn. Code Ann. § 29-2-201) may prevent enforcement of an alleged oral agreement, but does not preclude causes of action for unjust enrichment or detrimental reliance (also called promissory estoppel)); *Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 697 n.1 (Tenn. Ct. App. 2003) (". . . promissory estoppel is a separate cause of action, which may arise in some cases when a valid oral contract is made unenforceable by the Statute of Frauds. . ."); *Launius v. Wells Fargo Bank, N.A.*, 2010 WL 3429666, at *6 (E. D. Tenn. Aug. 27, 2010) ("While promissory estoppel is not an exception to the Statute of Frauds, it

9

does provide an independent cause of action."); *see also Steelman v. Ford Motor Credit Co.*, 911 S.W.2d 720, 724 (Tenn. Ct. App. 1995) (explaining that the plaintiff did not seek to enforce an oral agreement, which would have been barred by statute of frauds, but instead seeks to recover funds "under such circumstances that in equity and good conscience [the defendant] ought not to retain."); *Smith v. Hi-Speed, Inc*., 536 S.W.3d 458, 476-484 (Tenn. Ct. App. 2016) (court holds oral contract claim is barred by statute of frauds, but considers promissory estoppel claim on the merits.)[3]

Although they have not filed a separate motion applying the relevant standards, Defendants suggest in their brief that the Court certify this issue to the Tennessee Supreme Court. Defendants argue certification is appropriate because certification was ordered on the issue by another district court in this state several years ago. *See Carbon Processing & Reclamation, LLC v. Valero Marketing & Supply Co.,* 823 F. Supp. 2d 786, 823-24 (W.D. Tenn. 2011). The Tennessee Supreme Court ultimately declined to answer the certified questions in that case because it found them to be moot. *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, No. M2011–02571–SC–R23–CQ (Tenn. Feb. 23, 2012) (order denying Rule 23 certification) (Doc. No. 18-2). In this case, given the holdings of the majority of other courts, as well as the holdings of the Tennessee courts in an analogous context, the Court concludes there is a reasonably clear and principled course for deciding the issue, and therefore, declines Defendants' request for certification. *See* Tenn. Sup. Ct. R. 23 § 1; *State Auto Prop. & Cas. Ins. Co. v. Hargis,* 785 F.3d 189, 194 (6th Cir. 2015) (explaining that the federal courts generally will not certify questions when

---

[3] Some courts have viewed the plaintiff's promissory estoppel argument as asserting an "exception" to the statute of frauds writing requirement. *See, e.g., S. Indus. Banking Corp. v. Delta Properties, Inc.,* 542 S.W.2d 815, 819 (Tenn. 1976); *Regions Bank v. Lost Cove Cabins & Campgrounds, Inc.*, 2010 WL 4514957, at *7 n.7 (Tenn. Ct. App. Nov. 9, 2010); *Seramur v. Life Care Centers of Am., Inc.*, 2009 WL 890885, at *5 (Tenn. Ct. App. Apr. 2, 2009). In this case, Plaintiffs do not argue promissory estoppel is an *exception* to the statute of frauds; they allege promissory estoppel as a separate cause of action.

10

statutory interpretation and case law leave a "reasonably clear and principled course" for deciding an issue); *see also Church Joint Venture v. Blasingame,* 947 F.3d 925, 932-33 (6th Cir. 2020).

Defendants alternatively argue Plaintiffs have failed to adequately allege a claim for promissory estoppel. As discussed above, promissory estoppel "is an equitable doctrine, and its limits are defined by equity and reason." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d at 404 (citations omitted). In order to establish a claim of promissory estoppel, the plaintiff need not show an express contract exists between the parties. *Id.* at 405. Rather, the plaintiff must show the following elements: (1) a promise was made; (2) the promise was unambiguous and not unenforceably vague; and (3) the plaintiff reasonably relied upon the promise to the plaintiff's detriment. *Id.* at 404; *Kinard v. Nationstar Mortg. LLC*, 572 S.W.3d 197, 210 (Tenn. Ct. App. 2018); *Smith v. Hi-Speed, Inc.*, 536 S.W.3d at 483.

Defendants argue Plaintiffs have failed to adequately allege the third element because the allegations "merely raise[] the 'possibility' that the Defendants should have reasonably expected that the Plaintiffs would *immediately* begin disassembling inventory rather than waiting for the parties to finalize and memorialize an agreement with necessary items such as parts identification, delivery date, and the like." (Doc. No. 19, at 12). As described above, Plaintiffs allege Mr. Mincer promised, through a series of communications, to purchase BiotronX's inventory and requested Mr. Stevenson dismantle certain intact instruments as part of the deal. Plaintiffs allege Mr. Mincer specifically asked Mr. Stevenson, on September 28, 2018, if he had been working on the request to disassemble the instruments. (Doc. No. 15 ¶ 15). Thus, Plaintiffs allege Mr. Mincer requested and expected Mr. Stevenson to disassemble the instruments, and followed-up to make sure Mr. Stevenson complied with that request. Defendants' argument that these allegations are insufficient is unpersuasive.

11

Defendants also argue Plaintiffs have not adequately alleged they suffered substantial detriment that was foreseeable to Defendants. Defendants cite to the following language some Tennessee courts have quoted, which originally appeared in a treatise on the law of contracts, in describing promissory estoppel: "The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made." *Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn. 1982) (quoting L. Simpson, *Law of Contracts* § 61 (2d ed. 1965)). In the Amended Complaint, Plaintiffs specifically allege they lost $250,000, as well as the diminution in value of the intact instruments they disassembled at Mr. Mincer's request, as a result of Defendants' failure to follow through on their alleged promises. Plaintiffs also allege Defendants were aware of the harm that would result upon such a failure, specifically quoting an email to Mr. Mincer referring to the financial consequences Plaintiffs would suffer if the deal did not move forward soon. (Doc. No. 15 ¶ 16). Defendants have not cited any authority requiring more specific and detailed allegations to state a valid claim for promissory estoppel.

Finally, Defendants argue Plaintiffs have not alleged Defendants' conduct "verged on actual fraud," a phrase some Tennessee courts have used to explain that promissory estoppel should not be expansively applied. *Shedd v. Gaylord Entm't Co.*, 118 S.W.3d at 700 ("While this expansive definition may seem broad enough to apply to the circumstances before us, the Tennessee Supreme Court has taken a more restrictive view, limiting the application of promissory estoppel to 'exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud.'") (quoting *Baliles v. Cities Service,* 578 S.W.2d 621 (Tenn.1979)). Defendants have not cited any authority requiring specific allegations

12

of fraud be included in the complaint in order to withstand a motion to dismiss a promissory estoppel claim. In any event, Plaintiffs allege Defendants did not intend to carry out the promises they made to Plaintiffs at the time they made them. (Doc. No. 15 ¶ 23). This allegation, made in connection with Plaintiffs' promissory fraud claim, could be construed as conduct "verging on actual fraud." The Court is not persuaded the promissory estoppel claim should be dismissed as inadequately pled.

### D. **Promissory fraud**

Defendants argue Plaintiffs' promissory fraud claim should be dismissed because it is barred by the UCC statute of frauds, Section 47-2-201. Defendants cite two cases for this proposition. In the first case, the court did not address whether the trial court was correct in holding the statute of frauds barred the plaintiff's promissory fraud claim because the plaintiff's failure to address the issue on appeal constituted a waiver of the argument. *Red Ink Camel Co. v. Dowell*, 2018 WL 5734475, at *4-5 (Tenn. Ct. App. Nov. 1, 2018). In reaching that decision, the court did not address the underlying issue: "We express no opinion as to the applicability of the statute of frauds to the claims at issue in this case." *Id.* n.15. Thus, the *Red Ink Camel Co.* case does not stand for the proposition for which Defendants cite it, and does not advance the analysis here.

The second case Defendants cite was decided by the Supreme Court of Alabama, *Johnny Ray Sports, Inc. v. Wachovia Bank,* 982 So.2d 1067, 1074 (Ala. 2007). In that case, the Alabama court reasoned that, because the oral contract claim was barred by the statute of frauds, the fraud claim must also be dismissed: "'an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.'" 982 So.2d at 1074 (quoting *Bruce v. Cole,* 854 So.2d 47, 58 (Ala. 2003)). A majority of courts have adopted the opposite

13

view, as explained by the Seventh Circuit in *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136-37 (7th Cir. 2011):

> Drummond argues that the claim is barred by the Statute of Frauds. But the Statute of Frauds is a defense to a claim for breach of contract, not a defense to a tort, and fraud is a tort, and promissory fraud is a form of fraud and so a tort and so not subject to the Statute of Frauds. At least that is the majority rule. See *Consolidation Services, Inc. v. Keybank National Ass'n,* 185 F.3d 817, 823 (7th Cir.1999) (Indiana law); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 470 (5th Cir.2002) (Texas law); *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 801–02 (9th Cir.1991) (California law); *Lehman v. Dow Jones & Co.,* 783 F.2d 285, 294–96 (2d Cir.1986) (Friendly, J.) (New York law); *Restatement (Second) of Torts* § 530(1) and comment. c (1977); see also *Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 189 (3d Cir.1992) (New Jersey law); contra, *MediaNews Group, Inc. v. McCarthey,* 494 F.3d 1254, 1265 (10th Cir.2007) (Utah law); *Bruce v. Cole,* 854 So.2d 47, 58–59 (Ala.2003); *Telecom Int'l America, Ltd. v. AT & T Corp.,* 280 F.3d 175, 196 (2d Cir.2001) (New York law). (The Second Circuit in *Wall v. CSX Transportation, Inc.,* 471 F.3d 410, 416 (2d Cir.2006), reconciled *Telecom* with Judge Friendly's decision in *Lehman v. Dow Jones & Co, supra,* by distinguishing between a promise in the contract itself and a promise 'collateral' to the contract, such as a promise intended to induce the promisee to sign a contract.)

*see also Deutsche Bank Trust Co. Americas v. Garst,* 989 F. Supp. 2d 1194, 1204-05 (N. D. Ala. 2013) ("The Alabama rule is contrary to the majority rule among the fifty states.") Defendants have not attempted to explain why the Tennessee courts would likely adopt the Alabama "minority rule" on this issue, especially in light of the authority discussed above regarding the statute of frauds and promissory estoppel. Thus, the Court is not persuaded Plaintiffs' promissory fraud claim should be dismissed on statute of fraud grounds.

Defendants alternatively argue Plaintiffs' promissory fraud claim should be dismissed because it has not been pled "with particularity" as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but allegations regarding a person's state of mind may be alleged generally. The Sixth Circuit has explained that the requirements of Rule 9(b) must be read in conjunction with the simplified pleading standards of Rule 8:

14

> Although Rule 9(b)'s special pleading standard is undoubtedly more demanding than the liberal notice pleading standard which governs most cases, *see Erickson,* 127 S. Ct. at 2200, Rule 9(b)'s special requirements should not be read as a mere formalism, decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims . . . Instead, Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.' *Id.* (quoting Fed. R. Civ. P. 8(a)). This Rule 8 requirement is born out of a need to ensure fundamental fairness for defendants—a complaint need not provide an exhaustive roadmap of a plaintiff's claims, but it must be sufficient to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' *Erickson,* 127 S. Ct. at 2200 (quoting *Twombly,* 127 S. Ct. at 1964). So long as a complaint provides the defendant with such minimal notice, Rule 8's requirements are met.

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-04 (6th Cir. 2008) (citations omitted).

Under Rule 9(b), a plaintiff must "'allege the time, place, and content of the alleged misrepresentation . . .; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Id.*, at 504 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 504 (6th Cir. 2008)). As long as the plaintiff pleads "sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

The Tennessee courts consider "fraud," "intentional misrepresentation," and "fraudulent misrepresentation" to be different names for the same cause of action. *Hodge v. Craig,* 382 S.W.3d 325, 342 (Tenn. 2012). To recover for intentional misrepresentation, a plaintiff must prove: (1) the defendant made an intentional misrepresentation of a material fact; (2) the defendant made the representation "knowingly" without belief in its truth, or "recklessly," without regard to whether it was true or false; (3) the plaintiff justifiably relied on the misrepresentation and suffered

15

damages; and (4) the misrepresentation relates to an existing or past fact. *Hodges,* 382 S.W.3d at 343; *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.,* 447 F.3d 923, 931 (6th Cir. 2006).

As to the last element, Tennessee has also recognized that misrepresentation claims may be based on "promissory fraud," which requires the plaintiff to show the misrepresentation "'embod[ied] a promise of future action without the present intention to carry out the promise.'" *Power & Telephone Supply,* 447 F.3d at 931 (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)); *see also Shahrdar v. Global Housing, Inc.,* 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998). In other words, a future promise can support a claim for intentional misrepresentation if it was made with the intent not to perform. *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1332 (E.D. Tenn. 2016) (citing *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn.1978)). On the other hand, "[s]tatements of future intention, opinion, or sales talk are generally not actionable because they do not involve representations of material past or present fact." *Power & Telephone Supply,* 447 F.3d at 931.

In addition to the allegations discussed above, Plaintiffs specifically allege Defendants engaged in promissory fraud as follows:

> 23. The Defendants are liable to Plaintiffs under the principles of promissory fraud, because they misrepresented to Plaintiffs that Tech One would purchase the inventory of BiotronX if Plaintiffs would disassemble the instruments in that inventory for the utilization of the instrument parts, the Defendants did not intend to carry out their promise, and Plaintiffs were unaware that Defendants did not intend to perform and justifiably relied on that promise to their detriment. There is circumstantial evidence that the promise to purchase BiotronX's inventory was made with the intent not to perform in Mincer's actions of: (1) keeping information about Tech One's effort to obtain the contract to service Biocare Medical's instruments from Stevenson; (2) after Stevenson learned that Tech One got the contract with Biocare, working at first on a preliminary plan on how to deal with Stevenson's attempt to involve BiotronX without input from Stevenson; and (3) after telling Stevenson that Tech One intended to purchase all of BiotronX's assets, changing the focus of their discussions to Tech One's interest in the parts in

16

BiotronX's inventory, and requesting that Stevenson disassemble the complete instruments in its inventory that Tech One did not want.

(Doc. No. 15 ¶ 23).

Defendants argue Plaintiffs' claim should be dismissed because they "fail to articulate any basis for its (sic) conclusory allegation" that Defendants did not intend to carry out their promise, or that Defendants knew the alleged representations were untrue at the time they were made. (Doc. No. 19, at 15). On the contrary, Plaintiffs describe three items of "circumstantial evidence" as to Defendants' alleged intent not to carry out their promise when made. Defendants have not explained how their demand for more specific allegations regarding Defendants' intent squares with Rule 9(b)'s provision permitting allegations regarding a person's state of mind to be made generally. The Court is not persuaded Plaintiffs' promissory fraud claim should be dismissed on these grounds.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted in part, and denied in part.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

17